Matter of Nieves v Nieves (2019 NY Slip Op 07261)





Matter of Nieves v Nieves


2019 NY Slip Op 07261


Decided on October 9, 2019


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on October 9, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

CHERYL E. CHAMBERS, J.P.
JOSEPH J. MALTESE
HECTOR D. LASALLE
LINDA CHRISTOPHER, JJ.


2018-09892
 (Docket Nos. V-14195-14, V-17378-14)

[*1]In the Matter of Nicole Nieves, appellant, 
v
Dennis Nieves, respondent. (Proceeding No. 1)
In the Matter of Dennis Nieves, Jr., respondent, v Nicole Marie Nieves, appellant. (Proceeding No. 2)


Kreuza Ganolli, Brooklyn, NY, for appellant.
Heath J. Goldstein, Jamaica, NY, for respondent.
Janet Neustaetter, Brooklyn, NY (Nesta N. Johnson and Martha Schneiderman of counsel), attorney for the child.



DECISION & ORDER
In related proceedings pursuant to Family Court Act article 6, the mother appeals from an order of the Family Court, Kings County (Judith D. Waksberg, J.), dated August 9, 2018. The order, after a hearing, denied the mother's petition for sole legal and physical custody of the parties' child and granted the father's petition for sole legal and physical custody of the child.
ORDERED that the order is affirmed, without costs or disbursements.
The mother and the father have one child together, who was born in 2009. While the father was an active duty member of the U.S. Army and was stationed in and deployed to various locations, the child lived with the mother and had limited contact with the father. In 2012, the father was stationed in Florida. The mother moved with the child to Italy in March 2012 and lived there with the child for approximately 1½ years, returning to New York in September 2013. The move to Italy interfered with the father's parental access with the child. In 2015, the father was granted a disability discharge.
In 2014, the mother and the father each petitioned for sole legal and physical custody of the child. They were divorced in 2015, and both subsequently remarried. The father remained in Florida with his new wife. In 2017, during the course of the hearing on the petitions, the mother and her new husband (hereinafter the stepfather), who had joined the U.S. Army as an active duty member, moved to Texas, where the stepfather had been stationed.
In September 2016, a court-appointed forensic evaluator prepared a forensic evaluation, noting extensive evidence that the mother and the stepfather had engaged in behavior intended to alienate the child from the father. Despite this evidence, as well as other concerns regarding the mother's parenting, the forensic evaluator recommended against awarding custody to the father on the ground that it would be "devastat[ing]" to the child. Over the course of the hearing, [*2]which concluded in August 2018, almost two years after the forensic evaluation, the father had ongoing therapeutic parental access with the child via FaceTime and Skype, facilitated by a social worker. The child also spent school vacations, including entire summers, with the father. The mother consistently resisted the father's parental access, and the father was repeatedly required to seek court assistance to enforce his access.
After a hearing and an in camera interview with the child, the Family Court concluded that despite the forensic evaluator's recommendation, subsequent events warranted awarding sole custody to the father on the ground, among others, that he was better able to foster the child's relationship with the noncustodial parent. In an order dated August 9, 2018, the court denied the mother's petition for sole legal and physical custody of the child and granted the father's petition for sole legal and physical custody. The mother appeals.
"[T]he court's paramount concern in any custody dispute is to determine, under the totality of the circumstances, what is in the best interests of the child" (Matter of Demelfi v Fliedner, 172 AD3d 1206, 1207 [internal quotation marks omitted]; see Matter of Saunders v Scott, 172 AD3d 724, 726). Among the factors to be considered are "the quality of the home environment and the parental guidance the custodial parent provides for the child, the ability of each parent to provide for the child's emotional and intellectual development, the financial status and ability of each parent to provide for the child, the relative fitness of the respective parents, and the effect an award of custody to one parent might have on the child's relationship with the other parent" (Matter of Saunders v Scott, 172 AD3d at 726 [internal quotation marks omitted]; see Matter of McLennan v Gordon, 122 AD3d 742). "The existence or absence of any one factor in determining custody cannot be determinative on appellate review since the court is to consider the totality of the circumstances" (Matter of Cooper v Nicholson, 167 AD3d 602, 604; see Eschbach v Eschbach, 56 NY2d 167; Matter of Tumanova v Ali, 164 AD3d 1247, 1248).
The recommendation of a forensic evaluator is but one factor to be considered in making a custody determination (see Cunningham v Brutman, 150 AD3d 815, 816; Matter of Kozlowski v Mangialino, 36 AD3d 916, 917). It is not determinative and does not usurp the judgment of the court (see Cunningham v Brutman, 150 AD3d at 816; Matter of Kozlowski v Mangialino, 36 AD3d at 917).
" [O]ne of the primary responsibilities of a custodial parent is to assure meaningful contact between the child[ ] and the noncustodial parent, and the willingness of a parent to assure such meaningful contact between the child[ ] and the other parent is a factor to be considered in making a custody determination'" (Matter of Khan-Soleil v Rashad, 111 AD3d 728, 729, quoting Matter of Vasquez v Ortiz, 77 AD3d 962, 962; see Matter of Renee P.-F. v Frank G., 161 AD3d 1163, 1166). In contrast, " [w]illful interference with a noncustodial parent's right to [parental access] is so inconsistent with the best interests of the child[ ] as to, per se, raise a strong probability that the offending party is unfit to act as a custodial parent'" (Matter of Cooper v Nicholson, 167 AD3d at 605, quoting Matter of Bullard v Clark, 154 AD3d 846, 847; see Matter of Khan-Soleil v Rashad, 111 AD3d at 729-730).
Here, as the Family Court observed, the record is replete with evidence of the efforts of the mother and the stepfather to thwart the father's parental access and alienate the child from the father. As the father testified at the hearing, the mother and the stepfather appeared to be "punish[ing the child] for having a relationship with [him]" by, inter alia, forcing the child to take telephone and video calls with the father outdoors, even in inclement weather, taking a tablet that had been provided by the father to facilitate the video calls and that the stepfather claimed was "garbage," and confiscating gifts from the father. The mother and the stepfather also repeatedly refused to cooperate with travel plans, and the father, among other things, had to seek a writ of habeas corpus to bring the child to the airport for a planned visit. Moreover, the mother and the stepfather disparaged the father and his family to the child and caused the child to worry that the mother would not permit him to continue a relationship with the father. We agree with the court's determination that this conduct was so inconsistent with the child's best interests as to warrant awarding sole legal and physical custody to the father, notwithstanding the fact that the mother had been the primary custodian (see Matter of Khan-Soleil v Rashad, 111 AD3d at 729-730). Further, as the court observed, at the time the forensic evaluator made his recommendation that a change of [*3]custody would be detrimental to the child, the relationship between the father and the child was "extremely tenuous," whereas, due to "the extended visits," they subsequently developed a "solid relationship."
In contrast to the behavior of the mother and the stepfather, there was no evidence that the father or his family disparaged the mother or her family or interfered with her parental access during his time with the child. On the contrary, even when the child repeated the disparaging remarks made by the mother and the stepfather, the father demonstrated an ability to correct the child by calmly addressing misconceptions or bad behavior without overreacting or belaboring his point (see Eschbach v Eschbach, 56 NY2d at 172; Matter of Agyapon v Zungia, 150 AD3d 1226, 1227; Matter of Tofalli v Sarrett, 150 AD3d 1122, 1123). The father also demonstrated an ability to provide a calm atmosphere for the child, whose special needs were less pronounced when in the father's care.
Accordingly, there is a sound and substantial basis in the record to support the Family Court's determination that awarding the father sole legal and physical custody of the child was in the child's best interests.
CHAMBERS, J.P., MALTESE, LASALLE and CHRISTOPHER, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court